(No. 32108.— )

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* LEOPOLD LAMBERT *et al.,* Appellants.

*Opinion filed January 24, 1952.*

184

EDWARD P. DROLET, and SMALL & SALE, both of Kankakee, (EDWIN W. SALE, of counsel,) for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The Department of Public Works and Buildings, hereinafter referred to as appellee, filed its petition in the county court of Kankakee County on October 25, 1950, seeking to condemn a portion of a tract of land owned by Leopold and Aldia Lambert, husband and wife, for the construction of a freeway, a restricted superhighway. Certain other parties who have not joined in this appeal were made parties defendant as lien claimants. A jury viewed the premises, heard the evidence and returned a verdict in the amount of $17,125 compensation for the land taken and $1500 damages to land not taken. Motion for new trial was overruled and judgment rendered on the verdict. Appeal was taken directly to this court by Leopold and Aldia Lambert, who will hereafter be referred to as appellants.

The entire tract owned by appellants consists of about thirteen acres lying east of and adjoining U.S. Highway 45 approximately one-half mile north of the corporate limits of the village of Chebanse in Kankakee County. The portion to be taken adjoins the present highway and extends across the entire front of the property and has a depth of approximately 196 feet on the north end and 318 feet on the south end and contains about 3½ acres. The Illinois Central Railroad runs parallel to U.S. Route 45 and its right of way adjoins the present highway on the west across from appellants' land.

Appellants filed a cross petition alleging that they purchased the thirteen-acre tract in 1936, with knowledge of a plan by appellee to improve the existing highway by the erection of a subway under the Illinois Central Railroad tracks a few rods north of the property, or to reroute said highway so that it would enter the city of Kankakee from the south and to the east of the right of way of the railroad. Appellants further alleged that they purchased the property with the intention of establishing thereon a restaurant and motor court which would serve the public irrespective of the route finally selected by appellee; that subsequently appellee planned to widen the highway, but that no plans for the creation of a freeway were publicized; that in consequence said appellants expended large sums of money and much time and effort over a period of eleven years in an effort to build an establishment of sufficient value to enable them to borrow against the same sufficient funds to carry out their plans; and that the plans of appellee to create a freeway were not made known to appellants until less than a year prior to the filing of the petition. Appellants prayed damages to the land not taken by reason of the creation of the freeway.

The record discloses that the thirteen-acre tract was formerly the site of a tile factory and that approximately seven acres is fairly level and tillable and that the remainder contains several small ponds and is not tillable. The tract has a frontage of approximately 620 feet on U.S. Route 45. Shortly after they purchased the property appellants installed some underground drains, dug a well and a basement, constructed foundations and installed on the premises the body of a wooden trolley car and built what has been referred to in the evidence as the main part of the big building. The trolley car was installed in a position approximately parallel to and seventy or eighty feet east of the highway and forms the front of the main building. The main building extends from the trolley car

in an easterly direction. It is a one-story building, 40 x 30 feet with a basement extending under the trolley car. Half the basement floor is concrete and the remainder is dirt. The outside of the main building is finished with log-cabin siding. A wide driveway approximately 300 feet long parallel to the highway extends along the front of the building and is surfaced with rock. A gas island and pumps were installed sometime after 1938 and for a time a filling station was operated on the premises, but this was discontinued during World War II. In 1941, an addition 20 x 32 feet was built onto the east end of the main building and is referred to in the evidence as the east addition. This addition rests on concrete piers and the outside is covered with common roofing paper held on with lath.

In 1948 an octagonal stucco structure was built as an addition to the north side of the main building, and between 1948 and 1950 a 25 x 30 foot concrete-block building housing a gas and charcoal grill was erected along the driveway to the south of the main building.

The main building is heated with a hot-water or steam boiler and stoker. The basement contains a food-storage locker and a small electrically operated service elevator between the basement and first floor. Inside the main building there is a bar, kitchen, dance floor and two toilets. The east addition is designed for use as two private dining rooms.

Most of the construction work was done by Lambert and his family. Witnesses for appellee testified that the construction and materials in the main building and additions thereto were not of good quality and that some of the materials were secondhand. One witness testified that the plumbing "seemed to be sort of a home made hook-up." Witnesses for appellants testified that the construction was fairly good and that most of the materials used were new or as good as new. All witnesses agreed that the small concrete block building had an unfinished floor and ceiling

and that some of the concrete blocks in one wall were not cemented.

All of the improvements are located on the tract to be taken. There are no buildings on the 9½ acres not taken.

A restaurant and tavern business was opened on the premises by Lamberts in 1938, but the business was discontinued on May 1, 1950. In 1943, Leopold Lambert began raising gladioli on about seven acres of the tillable land and was engaged in this business at the time of the filing of the condemnation petition. Almost half the tillable land in the entire tract is located on the part to be taken. During the summer of 1950 a hamburger and rootbeer stand was operated by appellants in the small concrete block building, but this was discontinued. At the time of the filing of the condemnation petition no business was being operated on the premises except the raising of gladioli. The small building was not in use. The Lamberts were using the main building for living quarters and the storage of gladioli bulbs.

It should be noted here that the designation of the highway proposed to be constructed as a freeway and the construction thereof according to the proposed plans would render that part of appellants' property not taken useless for a tavern, filling station or motel site because of restricted access thereto, and the only practical remaining use of the land not taken would be for residential or agricultural purposes.

The first assignment of error by appellants is that the amount of the verdict is contrary to law and against the weight of the evidence.

A total of sixteen witnesses, ten for appellant and six for appellee, testified concerning values, damages and uses to which the property could be put before and after the taking. As is common in condemnation cases, the testimony as to the highest and best use to which the property

could be put was conflicting and the witnesses' opinions as to values and damages varied over a wide range.

It is a well-established rule in these cases that where the jury has viewed the premises and the amount fixed is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. (*Illinois Iowa Power Co.* v. *Rhein*, 369 Ill. 584; *Forest Preserve Dist.* v. *Dearlove*, 337 Ill. 555; *Jefferson Park Dist.* v. *Sowinski*, 336 Ill. 390.) The land is to be valued according to its highest and best use as shown by the evidence even though the owner may not at the time of the filing of the petition be putting it to such use. *Department of Public Works and Buildings* v. *Barton*, 371 Ill. 11.

We see no useful purpose in here setting forth in detail the testimony of each witness. We have carefully examined all of the testimony and the exhibits. As to damages to land not taken, appellee's witnesses' opinions ranged from $950 to $1900 while opinions of appellants' witnesses ranged from $1065 to $3135. It would appear therefore that the jury's verdict of $1500 for damages to the land not taken is well within the range of this evidence.

As to the value of the land and buildings taken there is a much greater range. Testimony of appellee's witnesses ranged from $13,500 to $14,076 while that of appellants' witnesses ranged from $31,700 to $38,000. An analysis of the testimony of all the witnesses discloses that the major part of this discrepancy is due to the difference in opinion as to value of improvements upon the land. Witnesses for appellee stated that their lower valuations were attributed to poor construction, workmanship and materials and the fact that the east wing of the main building and the small concrete-block building were unfinished and some of the other parts were in need of repairs. Witnesses for appel-

lants, on the other hand, stated that the workmanship and materials were good and allowed little or no depreciation in value on this account.

It will be noted that the jury's award for the land and buildings taken was in the sum of $17,125. This was $3049 greater than the highest valuation placed thereon by appellee's witnesses and $14,595 less than the lowest estimate given by appellants' witnesses. It was well within the range of the testimony. The jury examined the buildings and saw the nature of materials and workmanship therein. It heard the testimony regarding the uses to which the land could be put before and after the taking and it viewed the premises. After a careful consideration of all of the authorities cited by appellants, in the light of the testimony given in this cause, we cannot say that the amount of the verdict is clearly against the weight of the evidence, or that the jury was influenced by passion or prejudice.

Appellants also assign as error the lower court's refusal to admit evidence of the amount of a cash offer for the purchase of the premises involved before condemnation proceedings were instituted. A real-estate broker testifying for appellants was asked what offer was made for the purchase of a part of the land to be taken in this proceeding. Appellee objected on the ground that such testimony was immaterial. The court then permitted the witness to be examined and cross-examined out of the presence of the jury for the purpose of ascertaining whether such testimony should be admitted. It developed that the offer was made by a man named Nichols from Elkhart, Indiana, who wanted to purchase the entire frontage along the existing highway to a depth of 200 feet; that the offer was made in the early part of July, 1949; the original offer was $25,000 which was later raised to $35,000; the prospective purchaser gave the witness $500 in cash to pay down as earnest money and authorized the witness to enter

into a written contract for the purchase of the premises for cash, the balance of $34,500 to be paid upon delivery of the deed and abstract. Lambert rejected the offer. On cross-examination the witness testified that he did not see the full amount of cash and that he did not know whether Nichols was able to pay it. The court refused to admit the evidence.

The rule is established in this State that, in the absence of evidence of actual sales, *bona fide* offers to purchase for cash by persons able to buy are some evidence of what the property would sell for. (*City of Chicago* v. *Lehmann,* 262 Ill. 468.) In *Kankakee Park Dist.* v. *Heidenreich,* 328 Ill. 198, we held that in the case of evidence of an offer made for the lands in question the *bona fide* character of the offer is a preliminary question which must be decided by the court. The question whether the evidence should be admitted is one involving the discretion of the court, and the decision of the court upon the preliminary question will not be disturbed unless it is manifestly against the weight of the evidence. The burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide* and made by a person able to comply with the offer if it were accepted. (*Jefferson Park Dist.* v. *Sowinski,* 336 Ill. 390.) The witness testified that he did not see all of the cash money and that he did not know whether Nichols was able to pay it. There was no evidence showing the qualification or ability of the prospective purchaser to comply with the offer if it had been accepted. The trial court did not abuse its discretion in excluding this evidence from the jury.

About the year 1940, Leopold Lambert made some drawings of plans for two units of motels which he planned to build on the property, but up to the time of the filing of the condemnation suit in 1950 no actual construction had been commenced. These drawings were offered in evi-

dence by appellants and admitted. After the commencement of the suit, Lambert had a plat prepared by a landscape architect. The architect's plat was based on Lambert's original drawings, but elaborated upon them considerably, showing the construction of fishing ponds and other recreational facilities as well as a trailer court and motel units. The plat of the architect, which had been completed about ten days before the trial, was offered in evidence and objection thereto was sustained by the court. Appellants contend this was prejudicial error and that the architect's drawing should have been admitted.

Appellants rely on the case of *Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163. As stated in that case, the question of whether evidence of this kind is proper depends entirely upon the purpose for which it is offered and to which it is limited by the court. If it is offered merely as an illustration of one of the uses to which the property is adapted and it is clearly and expressly limited by the court to such object it will not be prejudicial error to admit it, but, if the object is to enhance the damages by showing such a structure would be a profitable investment, it is clearly incompetent. We held in that case that it was not prejudicial error to admit plans of a certain structure which the landowner had, for a number of years past, contemplated erecting on the premises. We there further stated, however, that the practice of introducing such evidence should not be encouraged, as there is generally more or less danger of its being misunderstood by the jury.

In the case of *Sexton* v. *Union Stockyard and Transit Co.* 200 Ill. 244, we held that it was not error to exclude plans offered by appellants for the purpose of showing adaptability of the land for the building, in the near future, of extensive warehouse and railroad yards, where the plan was not of any structure which appellant actually contemplated erecting.

In the case of *Department of Public Works and Buildings* v. *Chicago Title and Trust Co.* 408 Ill. 41, aerial photographs were offered by appellant for the purpose of showing the nature of the terrain. The lower court excluded the photographs and on appeal we held that while such exhibits might properly have been admitted, still it was a matter within the discretion of the trial court, and its failure to do so was not such an error as to warrant reversal of the judgment.

In the case at bar appellant and various witnesses testified as to the adaptability of the premises for use as a tavern, restaurant, motel and trailer court, a topographic map prepared by a civil engineer was admitted as one of appellants' exhibits, and appellant Lambert's own drawings and plans of contemplated improvements were admitted in evidence. It was within the discretion of the lower court as to whether the architect's drawings should be admitted and there was no error or abuse of that discretion in their refusal.

Appellants next contend that the court erred in permitting counsel for appellee, upon cross-examination of Leopold Lambert, to direct questions to him regarding his financial condition immediately prior to and at the time of filing the petition for condemnation. The record shows that at the commencement of the trial a stipulation was made in the presence of the jury that Richard Dressel, one of the defendants, held a mortgage on the premises; that there were two judgments against the Lamberts which were liens against the premises, one in the sum of $4005 and the other in the sum of $363.10; and that the Department of Revenue of the State of Illinois claimed two liens against them, one in the sum of $40 and the other in the sum of $9.07.

On direct examination Leopold Lambert testified that he discontinued the operation of his tavern business on April 30, 1950, because he did not want to pay out $1200

for State and local license after he had been advised the road would probably be built in 1950 and he did not know how long he might be permitted to operate. On cross-examination counsel for appellee was permitted to ask Lambert whether or not his business operations on the premises resulted in financial difficulties for him, and was permitted to inquire into the nature of the indebtedness resulting in the judgments and liens taken against his property shortly before he discontinued his tavern business. Profits or supposed profits arising from a business are not competent and are not a proper element of damages unless the property sought to be taken is designed for, or applied to, such a special use that its market value cannot be ascertained in any other manner. (*Forest Preserve Dist.* v. *Hahn,* 341 Ill. 599.) The same rule should apply to losses, although no case involving the question of losses has come to our attention. Evidence of the financial condition of the landowner would be highly irrelevant and immaterial in ascertaining the fair cash market value of his property and should not be admitted. However, with the stipulation concerning these liens and judgments having been made before the jury, and Lambert having testified on direct examination as to the reasons for his discontinuing the tavern business on the premises, the trial court did not commit prejudicial error in permitting questions to be put on cross-examination which might show that the business was discontinued for reasons other than those stated on direct examination. The record discloses that cross-examination was fairly limited by the trial court and these questions and answers, though immaterial in ascertaining the fair cash market value of the property, could not have had any material bearing on the verdict of the jury.

Appellants next contend that the court erred in preventing Leopold Lambert from testifying to certain intricate details of the improvements which he placed upon the premises and by improperly sustaining objections of oppos-

ing counsel in the course of this testimony. It would serve no useful purpose to here set forth the lengthy colloquies which took place between the court and counsel for both sides in this respect. It is apparent from the record that Lambert was permitted to testify in great detail to all matters material to the issues and we find no abuse of discretion by the trial court in limiting his testimony.

Appellants also complain of the conduct of counsel for appellee in arguing on rulings on evidence throughout the trial and in pursuing a course of questioning of witnesses designed to convince the jury that because the buildings on the premises had not been operated as a tavern since April 30, 1950, their highest and best use as a tavern and related business could not be considered. We have studied the entire record and find this contention to be without merit. The testimony as to values is in direct conflict. The verdict is within the range of the testimony. The rule is, that under those circumstances the award will not be disturbed on review unless there is something in the record showing that the verdict was a clear and palpable mistake, or the result of passion or prejudice. (*Department of Public Works and Buildings* v. *Foreman State Trust and Savings Bank,* 363 Ill. 13.) There is no such showing in this record.

The last contention of appellants is that the court erred in refusing to give one of appellants' instructions. It is not contended by appellants that all points covered in their tendered instruction were not covered in other instructions which were given, nor is it contended that the instructions which were given erroneously stated the law. It is maintained, however, that the instruction not given should have been given, either in lieu of some of those given or in addition thereto. It is well settled that where a refused instruction contains the same principles contained in other instructions given and the instructions given correctly state the law, the case will not be reversed even though the

refused instruction also correctly states the law. (*Sanitary Dist.* v. *Johnson,* 343 Ill. 11; *Ergang* v. *Anderson,* 378 Ill. 312.) After reviewing all of the instructions, we are of the opinion that the jury was adequately and properly instructed and the refusal of the tendered instruction was not error.

The judgment of the county court of Kankakee County is affirmed.

*Judgment affirmed.*