THE DEPARTMENT OF CONSERVATION, Petitioner-Appellant, *v.* WILLIAM E. KYES *et al.*, Defendants-Appellees.

Second District   No. 76-324

Opinion filed February 22, 1978.

William J. Scott, Attorney General, of Chicago (Karl Yost, Assistant Attorney General, of counsel), for appellant.

Nack, Richardson & Nack and Roth & Elliott, both of Galena, and John Olivero, of Peru, for appellees. .

Mr. JUSTICE GUILD delivered the opinion of the court:

On May 29, 1974, the Department of Conservation of the State of Illinois (hereinafter referred to as the State) filed a petition to condemn the real estate located at 512 Bouthillier Street in Galena, Illinois. Named as defendants in this proceeding were William E. Kyes and Neil J. Robbins, the owners of the property, Lois Zurliene, a contract purchaser of the property, and the Galena State Bank and Trust Company, which held a mortgage on the property. The jury returned a verdict of $48,000 as just compensation and judgment was entered upon the verdict. The State's post-trial motion was denied and the State appeals.

The property has approximately 60 feet of frontage on Bouthillier Street and varies in depth from 127 to 133 feet. It is immediately contiguous to the U. S. Grant Home State Memorial. The improvements

on the property consist of a small house which has been renovated for commercial usage as a restaurant and a small outbuilding. Prior to hearing any testimony the jury viewed the subject property.

Thereafter the State presented only one witness, a real estate appraiser who testified that, in his opinion, the value of the property was $14,500. He characterized the highest and best use of the property as a "limited commercial" use for something like a small restaurant, gift or antique shop. His testimony included evidence of approximately 20 real estate transactions, all but one of which involved sales of residential real estate. He considered these sales comparable because there was no zoning in Galena at the time and, therefore, he felt that the properties could have been converted to commercial uses if the owners had so desired.

Defendants Kyes and Robbins both testified to their acquisition of the subject property, improvements made upon it by them, and their operation of a restaurant on the premises during the last two months of the tourist season in 1972. They further testified to the negotiations resulting in a contract to sell the subject property to defendant Zurliene and her default on that contract after learning of the State's intention to acquire the subject property. Zurliene also testified to the negotiations and contract for sale of the property to her. In addition, she testified at length concerning her plans to build a carriage and harness museum on the subject property.

The defense also introduced the testimony of two valuation witnesses. Both testified that the highest and best use of the property was commercial, especially because of its location next to the Grant Home. Both also testified concerning the sale of the Grantview Inn, directly across the street from the subject property, as a comparable sale. One witness valued the subject property at $48,000 and the other at $56,256. Finally, there was rebuttal testimony concerning the issue as to when defendants Kyes and Robbins first acquired knowledge that the State might be interested in acquiring the subject property.

The State contends that it is entitled to a new trial because of the following allegedly erroneous actions of the trial court: (1) admitting evidence of the $68,000 asking price which Kyes and Robbins placed on the subject property when they offered it for sale; (2) admitting evidence of the defaulted contract between Kyes and Robbins and Zurliene (hereinafter referred to as the Zurliene contract); (3) admitting evidence of a $25,000 mortgage on the subject property; (4) admitting evidence concerning defendant Zurliene's plans for use of the property; (5) admitting evidence of the sale of the Grantview Inn as a comparable sale and the testimony of the defense valuation witnesses based on it; and (6) allowing improper comments by defense counsel during closing argument.

■■ It is a well established rule in condemnation cases that when the jury has viewed the premises and the amount of the verdict is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows that it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. (See, *e.g.* *Trustees of Schools v. LaSalle National Bank* (1961), 21 Ill. 2d 552, 173 N.E.2d 464; *Department of Public Works and Buildings v. Lambert* (1952), 411 Ill. 183, 103 N.E.2d 356.) In addition, even the improper admission or exclusion of value evidence does not constitute reversible error when there is other evidence of value on both sides and the jury has the opportunity of weighing the conflicting evidence. *Trustees of Schools v. LaSalle National Bank.*

With these principles in mind, we turn to the State's first allegation that the trial court erred in permitting testimony that when Kyes and Robbins listed the subject property for sale, their asking price for the entire restaurant business thereon, including substantial amounts of personal property, was $68,000. The State complains of four specific instances in which such testimony was elicited. The first time the asking price was mentioned was in answer to a direct question concerning what the amount of that price was. The witness completed a rather lengthy answer before the State objected that such testimony was not an indication of the fair cash market value of the property. The court replied that it was competent as an asking price and that he would allow it, but only as an asking price, whereupon defense counsel replied that that was all that they were introducing it as. The remaining three instances in which the price was mentioned were during the testimony of the defendants about the negotiations leading up to the Zurliene contract. In response to one objection by the State, the court stated that the defense was only explaining the transaction between the defendants. Another time the court specifically instructed the jury that it was only an asking price.

■■■ We agree generally with the State's argument that testimony from an owner of property concerning his unaccepted offers to sell at a specific price is not evidence of the fair cash market value of such property. It is common knowledge that the asking prices which sellers place upon their property are often inflated. In addition, when an owner offers such evidence on his own behalf it is, of course, self-serving and therefore objectionable. (5 Nichols, The Law of Eminent Domain §21.4(2) (rev. 3d ed. 1975).) In this case, however, we do not believe that this evidence was offered for the purpose of showing the value of the property. No one argued that this asking price should be considered as evidence of value and the jury was specifically instructed that it was only an asking price and nothing more. All of the valuation witnesses testified to substantially lower opinions of value with the highest such opinion

being almost $12,000 less than the $68,000 asking price. The real reason such testimony was offered by the defense in this case is as background information having to do with the Zurliene contract. The exact nature and validity of that contract was a hotly disputed issue between the parties in this lawsuit. The State took the position that, in entering into that contract, Kyes and Robbins clearly took advantage of Zurliene, possibly to the extent of defrauding her and were attempting to do the same with regard to the State. Under such circumstances, the defense reacted by attempting to show that the contract was, in fact, the result of negotiations and entirely legitimate. We believe that the defense could and should have made its point without reference to the specific original asking price on the property but find that the mention of the price did not constitute reversible error under the circumstances of this case. This is especially so in view of the fact that the State made no attempt to object until after the first mention of the specific asking price on the property, even though it was clear from the question asked that it was aimed at eliciting such information. We refuse to accept the State's argument that the mere existence of such information is harmful and prejudicial to it. There is nothing in the instant record which indicates that the jury was in any way influenced or misled by the testimony concerning the asking price on the property.

The State next contends that the trial court erred in admitting evidence of the Zurliene contract. It was entered into in December 1972 and specified a purchase price of $48,000. Three lump sum payments were due before July 1, 1973, and the remainder was to be paid in monthly payments of $300 each. Interest was due at the rate of 7½% beginning January 1, 1973, but there was a provision to reduce the interest rate if other lump sum payments were made which substantially reduced the balance due on the contract. Zurliene was obligated to pay all taxes and special assessments and to provide insurance. Finally, the contract provided that if Zurliene failed to make the payments, the sellers had the option of declaring the contract forfeited and retaining the payments made to date as liquidated damages. Zurliene paid a total of $10,000 on this contract during December 1972. The contract, however, has been in default since July 1, 1973, when Zurliene did not make the payment due upon that date. The uncontroverted testimony in the record indicates that the reason for the default was that Zurliene learned that the State definitely intended to acquire the subject property, even though it was not certain when condemnation would take place.

The State argues that a defaulted contract such as this does not provide reliable evidence of the fair cash market value of the property and should be excluded. The State cites *City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 154 N.E.2d 242, which we find to be inapplicable. In *Blanton* only

$1000 of the $37,500 contract price was ever paid, and that was returned after the condemnation proceedings were filed. In addition, the contract contained an express provision giving the purchaser the option of forfeiting his down payment to the seller if he decided for any reason that he did not wish to proceed with the sale. The court concluded that this was in effect an option contract, which the trial court did not err in excluding when there was evidence of recent sales of similar land in the vicinity. While the ultimate results here might be the same as in *Blanton*, it is the sellers who are given the option of declaring the contract and payments thereon forfeited if the buyer does not fully perform as agreed upon. This is a standard clause in real estate installment sale contracts. The State takes the position that because the contract had been in default since July 1, 1973, the defendants were, in effect, treating this contract as an option contract. They inferred, both in the trial court and in this court, that if this were a true and binding contract, the sellers would have sued Zurliene. We agree with the trial court on this matter. Even though perhaps the sellers could have sued Zurliene, they were not in any way obligated to do so. The State also argues that, under the circumstances herein, there should have been some further showing that the contract represented a legitimate sale. We believe the fact that the purchaser had already paid $10,000 pursuant to this contract serves to emphasize its legitimacy as a contract and not a mere option to buy property. It is also undisputed that the purchaser went into possession, paid taxes on the property, and engaged in other activities indicating she had definite plans to buy and use the property in question. We will discuss those plans in more detail later in this opinion. Thus, we believe that the defense herein did, in fact, make a showing that this was a bona fide contract for sale of the subject property, which would have been performed but for the condemnation.

■■ There appears to be little law in Illinois dealing directly with the admissibility of evidence of installment sales contracts under circumstances similar to this case. In other jurisdictions, however, evidence of the price fixed in a contract, made in good faith, for the sale of the property being condemned is admissible, regardless of the fact that it is an installment contract (5 Nichols, The Law of Eminent Domain §21.5 (rev. 3d ed. 1975). *Department of Public Works and Buildings v. Kelly* (1976), 40 Ill. App. 3d 896, 353 N.E.2d 195, involved the installment sale of the remainder of the property being condemned. That case held that the trial court did not abuse its discretion in excluding evidence of the contract in question. It is obvious from the description of the contract given in *Kelly*, however, that it contained many more provisions than the instant contract, some of which were highly unusual, including the fact that the seller was to remain on the premises without rental payments and

that the purchaser had no personal liability on the contract. *Department of Public Works and Buildings v. Klehm* (1973), 56 Ill. 2d 121, 306 N.E.2d 1, involved the sale of the property being condemned under an installment contract. While the exact issue before the court in *Klehm* was whether the contract constituted a sale for cash or an exchange of property, we note that evidence of the contract was held to be properly admitted. The contractual documents contained a number of rather unique provisions, including specific provisions with regard to what would happen if the property were condemned. In *Forest Preserve District v. Barchard* (1920), 293 Ill. 556, 563, 127 N.E. 878, 882, which involved installment sales of real estate admitted as comparable sales, the supreme court said:

> "This court has held that sales which have been partly on time may be admitted in evidence in order to assist the jury in arriving at the fair cash market value of the land in controversy [citations] but the court said in those cases, that while competent its value as evidence was for the jury, and it is clear under the reasoning of those cases that the actual cash value of the land to be taken is the sole inquiry to be passed upon by the jury, and that time sales are only given to assist them in arriving at the right conclusion on the cash value."

We believe these statements are also applicable to cases involving installment sales of the property being condemned. Unless it is obvious that admission of the evidence will clearly mislead the jury into considering collateral matters and issues, we believe that the trial court's exercise of discretion as to the admission of such evidence is indeed broad. When the trial court decides to admit such evidence, as it did in this case, its value as evidence should be left to the jury. In this case we note that the State was also allowed to present its theory that Zurliene was not a knowledgeable buyer for the jury's consideration. The trial court did not abuse its discretion with regard to the admission of evidence concerning the Zurliene contract.

■■ Thirdly, relying upon *Schuster v. Sanitary District* (1899), 177 Ill. 626, 52 N.E. 855, the State argues that the admission of evidence of the amount of the mortgage on the subject property was reversible error. In *Schuster*, the supreme court found that the trial court had properly excluded evidence of a mortgage from the jury. The court specifically noted that the facts of the sale, including the amount paid for the property and present ownership, were otherwise fully proven by the evidence. Under these circumstances, the court concluded that the trust deed or mortgage had no legitimate office to serve in the hearing before the jury. In this case we note, first of all, that the existence of the $25,000 mortgage on the subject property was mentioned at only one point during the trial. In a colloquy out of the presence of the jury, the court clearly indicated to

counsel that the reason it was permitting the mortgage to be shown was to show the interest of the defendant Galena State Bank and Trust Company in this proceeding and that only the record proof was to be introduced. Although we note that the State protested this ruling vigorously and attempted to pursuade the trial court to exclude the evidence, we note that at no time during the discussion or during the subsequent admission of the evidence in the presence of the jury did the State ask the trial court for any instructions to the jury with regard to the proper purpose of the information. Finally we note that in closing argument the State argues that Kyes and Robbins had $23,000 tied up in the property by virtue of their expenses in buying and remodeling it. Under these circumstances we do not believe that the admission of the testimony with regard to the mortgage constituted reversible error.

As the fourth assignment of error, the State complains of the admission of Zurliene's testimony concerning her plans to erect a carriage museum on the subject property and also several exhibits admitted in connection with that testimony. Zurliene testified to her plans to construct a museum on the property and introduced certain plans and blueprints for the proposed improvement, which were made before she learned of the State's intent to take the property. Her testimony included the fact that her associate, Darrell Rinedollar, whom she subsequently married, owned a number of carriages and that both carriages and antiques were moved to Galena in the early months of 1973. A certificate of registration of the Galena Carriage and Harness Museum and Antique Shop, issued to Zurliene by the State of Illinois was admitted, as well as a building permit issued by the City of Galena for erection of the proposed structure. She testified she planned to charge a 50¢ admission fee to the museum and that she had paid taxes and other charges in connection with the property of approximately $1000.

■■ The State admits that evidence of the owner's plans for improvement of his property are admissible for the purpose of proving adaptability of the property to a particular use. In this case, however, the State complains that the testimony summarized above was admitted not for that purpose but for the improper purpose of showing the profitability of the proposed business. The State relies upon *Sexton v. Union Stock Yard & Transit Co.* (1902), 200 Ill. 244, 65 N.E. 638, in which the supreme court upheld the trial court's refusal to admit a map showing a "largely imaginary" plan of development under circumstances in which other testimony concerning the adaptability of the property to the proposed use had been admitted. Defendants rely upon *Chicago & Evanston R.R. Co. v. Blake* (1886), 116 Ill. 163, 4 N.E. 488, in which the supreme court upheld the admission of plans for a specific structure which the landowner had contemplated erecting on the premises.

Defendants argue that the testimony of which the State complains was aimed at showing adaptability of the property for a large-scale commercial use such as a carriage museum. They further contend that the evidence showed Zurliene's commitment for actually buying the property and that it was supportive of their position that Zurliene was a knowledgeable person who was not taken advantage of when she contracted to buy the property.

■■ The supreme court discussed both the *Sexton* and *Blake* cases in *Department of Public Works & Buildings v. Lambert* (1952), 411 Ill. 183, 103 N.E.2d 356. In that case the supreme court noted that the admission of such evidence is within the sound discretion of the trial court and held that the trial court did not abuse its discretion in refusing to admit an architect's plat which had been prepared just before trial. Substantial other evidence concerning the owner's plans for improvement of the property had been admitted. We have examined Zurliene's testimony and we note that in addition to the testimony of which the State complains there were numerous attempts to elicit more detailed information concerning how defendant Zurliene planned to finance the purchase of the property, whether there was a need for a carriage museum, and the estimates she had received for construction of various parts of the proposed structure. In each of these instances the trial court sustained the State's objection. Our examination of this testimony convinces us that it was not offered for the purpose of showing the profitability of the proposed structure and thereby enhancing damages. Rather we agree with the defense that the testimony went to showing the adaptability of the property for such a use, as well as to show the commitment and good faith of Zurliene with regard to the purchase of the property and her knowledge and ability to carry out the proposed project. As we noted earlier, the State was permitted to argue its theory that Zurliene was not a knowledgeable person. The defense was likewise entitled to present its theory that Zurliene was knowledgeable, and the State's objection to such testimony is not well taken. Our examination of the record convinces us that the trial court did not abuse its discretion in admitting substantial testimony from Zurliene concerning her plans for use of the property while, at the same time, excluding testimony concerning the minute details of the proposed project.

■■ We do agree with the State that Zurliene's testimony concerning the expenses she paid for storage of the carriages in Galena was immaterial to the issue of fair cash market value of the property. We find no reason to believe, however, that such testimony had any effect upon the verdict of the jury and, therefore, it was not reversible error. (*Cf. Department of Public Works & Buildings v. Lambert*, 411 Ill. 183, 194, 103 N.E.2d 356, 362.) With regard to the testimony concerning the fact that

Zurliene paid taxes and other expenses totaling $1000 in connection with the property, we note that the State did not object to such testimony at the time it was given and therefore waived any contention of error in this regard.

The State next complains that the trial court erred in admitting evidence of the sale of the Grantview Inn as a comparable sale and also erred in failing to strike the testimony of the defense valuation witnesses which was based on that sale. The rules governing the admission of testimony concerning comparable sales have been set out by the supreme court in *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 522, 170 N.E.2d 569, 575:

> "As we have also stated in the past, no fixed or general rule has or could be laid down which governs the degree of similarity that must exist between the properties sold and that condemned to make evidence of the sale or sales admissible; rather, the admissibility of such evidence must in each instance be determined by the trial judge within the proper limits of his discretion. [Citations.] This court, moreover, has recognized that 'similar' does not mean 'identical,' but means having a resemblance, and that property may be similar for purposes of fruitful comparison, though each possesses various points of difference. [Citations.] Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. [Citations.]"

In its brief we note that the State claims "both valuation witnesses for the defense based their appraisals solely on the sale of the Grantview Inn which was sold in 1971 for $72,500." We find this assertion is not supported by the record. While both of the witnesses testified that this was the only comparable sale they considered, it is clear that both also considered other factors such as the location of the property and its other characteristics which would affect its potential for various commercial uses.

In its brief the State points to differences between the two properties, including the fact that the Grantview Inn consisted of an operating restaurant with residential quarters attached and that it was substantially larger than the subject property, although neither defense valuation witness could testify to the exact size of the Grantview Inn or of the commercial and residential sections thereof. The State also complains of lack of testimony concerning the value of the fixtures which were included in the Grantview Inn and the value of the name and goodwill included in that sale. The brief states that the lack of such testimony

leaves the jury "to speculate about the reasonable adjustments to be made for the differences in the properties." In this regard, however, we believe the State misconceives the proper function of evidence concerning comparable sales. The State has not cited, and we are not aware of any case which requires the witnesses to testify to specific "adjustments" for all the differences between the sale offered as a comparable and the subject property. Indeed, we believe that testimony applying dollar amounts to all of the differences and then adding or subtracting would be extremely likely to confuse or mislead the jury. Testimony concerning the general differences is, however, appropriate, and it was received in this case.

■■■ With regard to the foundation testimony offered concerning the sale of the Grantview Inn, we note that the testimony established that the sale was made in 1971, that the property had a commercial use oriented towards the tourist business and, finally, that it was located across the street from the subject property, in close proximity to the Grant Home. It apparently was the only precondemnation sale involving commercial property in the immediate area of the Grant Home. In deciding to admit evidence of this sale, the trial court made the following statement to counsel for the State:

"THE COURT: Mr. Yost, when your appraisal was testifying I permitted considerable number of so-called comparable sales that were all residential sales. I, in doing so, was recognizing the fact that Galena this is not a big city where you can reach back a week or two and find a comparable sale. We just don't have that many structures. I think the same thing applies here with proper leeway is made in the testimony for the adjustment of this Grantview Inn sale. It's in the area, certainly; right across the street. Time-wise it's not too remote. I'll over-rule your objection."

In this regard we agree with the trial court that sufficient similarity between the properties was shown to make the evidence admissible. While we certainly agree with the State that further testimony concerning the exact differences in size of the properties might have been desirable, we do not believe that the same was absolutely required as foundation testimony. As the defense herein has pointed out, size differences between the offered comparable and the subject property do not automatically require that evidence of the offered comparable be rejected. (*Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.* (1975), 29 Ill. App. 3d 145, 329 N.E.2d 344; *Department of Public Works & Buildings v. Jensen* (1973), 11 Ill. App. 3d 93, 296 N.E.2d 52.) Further we note that on cross-examination of the witnesses involved, the State rather skillfully emphasized the differences between the subject property

and the Grantview Inn. The trial court did not err in admitting such testimony.

Finally, the State argues that the trial court committed reversible error in allowing·defense counsel to argue to the jury that Zurliene did not want to sell her property. The State relies upon *Illinois Power & Light Corp. v. Lyon* (1924), 311 Ill. 123, 142 N.E. 465, and *City of Chicago v. Cunnea* (1928), 329 Ill. 288, 160 N.E. 559. We find those cases factually inapplicable to the situation before us. In both cases the argument was clearly an appeal to passion and prejudice aimed at increasing the award of the jury simply because the owner did not want the property taken. Our case is radically different. The argument of which the State complains was merely a summary of Zurliene's testimony concerning the conversation which she had with the State's appraisal witness. In that conversation, among other things, she told him she did not wish to sell the property and he replied that the State could condemn it. The State did not object to the admission of this testimony when it was received and we believe that defense counsel was entitled to summarize this, as well as other testimony in the case. We find no undue emphasis was placed upon this conversation in either the examination of the witness or in the final argument.

We have carefully considered each of the State's allegations of error in the trial of this case. While the case was not perfectly tried, we find no reversible error. The judgment of the trial court, therefore, is affirmed.

Affirmed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.