56 Ill.2d 121 (1973)
306 N.E.2d 1
THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee,
v.
CARL G. KLEHM et al.  (Lee N. Romano et al., Appellants.)
No. 45427.
Supreme Court of Illinois.
Opinion filed November 20, 1973.
Rehearing denied January 29, 1974.
*122 Concannon, Dillon, Snook & Morton, of Chicago (William R. Dillon and John B. Dillon, of counsel), for appellants.
William J. Scott, Attorney General, of Springfield (Calvert J. Gordon, Frank S. Righeimer, and Frank S. Righeimer, Jr., Special Assistant Attorneys General, of counsel), for appellee.
Judgment affirmed.
MR. JUSTICE WARD delivered the opinion of the court:
On July 8, 1968, the petitioner, the Department of Public Works and Buildings of the State of Illinois (the Department) brought an eminent domain proceeding in the circuit court of Cook County to acquire 20.65 acres of an 85.99-acre tract of land, which was located in northwest Cook County and which the petition alleged was to be used in the construction of an interstate highway. The owner of the tract, Carl G. Klehm, the Schaumburg Plant Project Corporation (the Corporation), which had contracted with Klehm to purchase the tract, and Lee N. Romano, the Corporation's president, were named as defendants in the action.
The entire tract, which is basically rectangular in form, is located at the southwest corner of the intersection of Higgins Road (Route 72) and Rohlwing Road (Route 53). About 2,645 feet of the tract fronts on Rohlwing *123 Road and about 1,082 feet of it fronts on Higgins Road. Klehm did not own the very corner of the rectangle, where the two roads actually intersect. This corner, which was 189 by 205 feet, had been the site of a gas station which was not in use at the time the petition was filed. It is not concerned in this litigation. The 20.65 acres which were taken from the tract was the land that immediately fronted on Rohlwing and Higgins roads.
Four months before the petition to condemn had been filed, Klehm had entered into a contract (styled by the parties as "installment contract to purchase real estate") with the Corporation to transfer title to the entire tract. This instrument, which we shall refer to as the Contract, provided that the purchase price of the tract was to be $1,700,000. It called for the payment of $10,000 as earnest money at the time of its execution, for $990,000 to be paid upon the "first closing," for $350,000 plus interest to be paid at "the second closing," and $350,000 plus interest was made payable at the "third closing." Dates were designated in the Contract for the three "closings." On the same date the Contract was entered into a "supplemental agreement" was executed by the parties which, as it is pertinent here, provided that at his option the seller Klehm was to have the right to select parcels of real estate in northeastern Illinois, which the purchaser, the Corporation, would then acquire with its own funds and transfer to Klehm. Any funds which would be expended by the Corporation to acquire these parcels designated by Klehm were to be "allowed [as] a credit against the purchase price" set out in the Contract. The supplemental agreement also provided that in the event all or part of the tract was condemned Klehm would satisfy his obligation to convey whatever land was taken by eminent domain by turning over to the purchaser the condemnation award. The agreement declared that the purchaser, i.e., the Corporation, was to be obligated to conduct all litigation in connection with any eminent *124 domain proceedings that might be instituted, and the agreement stated that if the award per acre received in any condemnation proceeding was less than the per-acre price under the Contract the purchaser would be required to pay the difference to the seller. If the condemnation award per acre was greater than the Contract price per acre, under the agreement the seller was to pay to the purchaser the difference.
Klehm, under the Contract to sell for $1,700,000, received from the Corporation: $35,000 in cash; $524,600 in cash from the "quick take" award deposited by the petitioner; the purchaser's promissory note for $240,400, and 843 acres of land which were designated by Klehm pursuant to his option under the supplemental agreement. These lands were acquired by the Corporation for $900,000 and their transfer to Klehm was considered to satisfy the purchase price called for in the Contract to the extent of $900,000.
Under the "quick take" provisions of sections 2.1 through 2.10 of the Eminent Domain Act (Ill. Rev. Stat. 1967, ch. 47, pars. 2.1 through 2.10) hearings to determine preliminary "just compensation" were held on July 16, 1968, and the preliminary just compensation was fixed at $600,600. After a jury trial late in 1970, a verdict was returned awarding $454,300 as compensation for the taking of the 20.65 acres. The jury found there had been no damages to the remainder of the tract. The appellate court affirmed (6 Ill. App.3d 752) after an appeal by the Corporation and by the defendant Romano. That court under our Rule 316 certified that the case involved a question of such importance that it should be decided by this court. Ill. Rev. Stat. 1971, ch. 110A, par. 316.
A claim is made by the appellants, the Corporation and Romano, that the trial court erred in permitting the Contract to go to the jury as evidence of the value of the subject property, because the transaction between Klehm and the purchasers, i.e., the Corporation and Romano, *125 really involved exchanges of real estate rather than a sale for cash. It is argued that the transaction between the parties was considered as an exchange by the Internal Revenue Service and that the instrument was designed to avoid a sale, which would have made the seller Klehm liable for capital gains tax. The appellants, citing Jefferson Park Dist. v. Sowinski, 336 Ill. 390, 393, and Lanquist v. City of Chicago, 220 Ill. 69, 72, say that exchanges of land are not admissible as comparable sales of property to assist a jury in establishing the value of the land.
In an eminent domain proceeding evidence of comparable sales of land may be admitted in most jurisdictions, including Illinois, as evidence of the value of the land which is the subject of the eminent domain proceedings. (85 A.L.R.2d 110.) Whether the evidence shall be admitted in a given case rests within the discretion of the trial court. (City of Evanston v. Piotrowicz, 20 Ill.2d 512, 522; Sanitary Dist. of Chicago v. Boening, 267 Ill. 118, 121.) Evidence of a previous sale of the tract of land that is the subject of the eminent domain proceeding may be admitted. (Forest Preserve Dist. v. Hahn, 341 Ill. 599, 603.) The underlying reason for admitting the evidence is that, depending on the similarity of the tracts being compared, the sales price paid in a voluntary sale of one parcel of land may tend to show the fair cash market value of the other parcel. Too, it provides an objective dollar market value for the jury to consider and compare with the testimony of appraisers as to the estimated value of the land to be condemned.
While evidence of comparable sales may be admissible, it is generally said that evidence of exchanges of land is not. (Jefferson Park Dist. v. Sowinski, 336 Ill. 390, 393; Lanquist v. City of Chicago, 200 Ill. 69, 72.) Evidence of a comparable sale gives the jury the benefit of an objective market evaluation, against which it can consider an appraiser's valuation of the property taken. (People ex rel. Department of Public Works v. Reardon (1971), 4 Cal.3d *126 507, 483 P.2d 20, 93 Cal. Rptr. 852; 4 Nichols' The Law of Eminent Domain (3d ed. rev. 1971), sec. 12.311[3], at 125.) In the case of an exchange of lands, however, there is no objective market value presented for consideration by the jury, and the reason for admitting evidence of comparable sales is not present.
The appellate court did not err in holding that the trial court did not abuse discretion in admitting evidence of the Contract. The instrument clearly resulted in a contract of sale and not a bargain for an exchange of lands.
The instrument was designated as an installment contract to "purchase." It fixes a "cash purchase price" of $1,700,000, which was made payable in installments. It provides that if the award per acre was less than the per-acre value established in the Contract the purchaser was to pay the seller the difference between the price per acre called for in the Contract and the amount per acre received in the condemnation proceedings and that if the award per acre was greater than that called for in the Contract the seller was to pay the purchaser the difference. In making these provisions for the contingency of condemnation the Contract referred to the "per acre value established by said installment contract to purchase real estate." The agreement further provided that should the seller exercise his right to designate land to be acquired by the purchaser, any funds expended by the purchaser to acquire the designated parcels were to be "allowed as a credit against the purchase price" set out in the Contract. It is evident that no simple exchange of lands was contemplated. The consideration to be received by the seller was $1,700,000.
We have no doubt that the Contract between Klehm and the Corporation established by agreement an objective dollar market value for Klehm's tract as of four months prior to the quick take of a portion of the tract. The trial court did not abuse discretion in providing the jury with evidence of an objective and voluntarily reached market value. Regardless of how the transaction may have been *127 regarded for purposes of Federal taxation, the Contract was admissible.
We would add that the objections by the defendant to the introduction of the Contract in evidence were that the transaction involved was an exchange and not a sale. There was no objection of any significant change in circumstances (and no change is suggested) during the four months between the formation of the Contract and the filing of the petition by the plaintiff which might have affected the significance and the admissibility of the Contract.
Another contention of the Corporation and Romano is that the trial court erred in permitting the Department's appraisal witnesses to testify as to the dollar amount of the increased value of the remainder after the taking without instructing the jury as to this testimony. They claim the jury should have been instructed that if it found increased value to the remainder it could only consider the increase as a setoff to any damages to the remainder caused by the taking and that the jury should have been instructed that any increase in the value of the remainder could not be considered by it as an offset against the value of the property taken.
It is, however, admitted that at trial there was no request that instructions of the type described in their contention be given. The Civil Practice Act provides: "No party may raise on appeal the failure to give an instruction unless he shall have tendered it." (Ill. Rev. Stat. 1971, ch. 110, par. 67(3).) See also Chicago Land Clearance Com. v. Darrow, 12 Ill.2d 365, and People v. Damen, 28 Ill.2d 464, 469, where this court said: "[W]e have repeatedly announced the rule that the court is under no duty to give instructions not requested by counsel."
The appellants say further that if the trial court did not have any obligation to give instructions under the circumstances it should have prohibited the Department's witnesses from testifying as to any dollar amount of increased value to the remainder. They suggest that they *128 did object to this character of testimony during a conference with the trial court held outside the presence of the jury. They concede that no objection was later made during the giving of the complained-of testimony. The record does not support the suggestion that this objection was made during the conference with the trial court. The record shows that the objection discussed with the court (which was not raised on appeal) was one made to any testimony which would suggest an increased value to the remainder because of benefits caused by improvements made on the condemned land. There was no objection to the evidence of dollar amounts. The record shows that when the defendants asked that a continuing objection be noted, the trial court instructed the defendant to make an objection at the proper time so that the record would be made clear. No objection was made and nowhere in the record does any objection to the testimony now challenged appear. The claim of error cannot now be asserted on appeal. City of Chicago v. Giedraitis, 14 Ill.2d 45; Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill. 416; Illinois Iowa Power Co. v. Rhein, 369 Ill. 584.
Another contention of error is that questions asked by the plaintiff of one of the defendants' valuation witnesses were improper and calculated to prejudice the jury, and also that the introduction into evidence of the Code of Ethics of the American Institute of Real Estate Appraisers was error. On cross-examination the Department's attorney had asked a defendants' valuation witness if he had testified in another case that property across the street from the tract involved in the petition was worth $40,000 an acre. The witness reponded that he had. Defense counsel first objected and then withdrew the objection saying, "Let him answer, let him explain." The plaintiff's attorney went on to ask the witness if it was true that he had testified that there were not any damages to the remainder in the other case. When the witness answered *129 "That's also correct," there was no objection. It is clear that because no objection was made in the trial court the defendants cannot contend on appeal that the questions presented were objectionable. Similarly there was no objection made to the admission of the Code of Ethics of the American Institute of Real Estate Appraisers at trial. The objection cannot be made for the first time on appeal.
The final claim of error is that the Department's attorney and one of his expert witnesses deliberately misled the trial court and jury and that the misleading and prejudicial testimony of the witness violated the defendants' constitutional right to just compensation. The record shows that after the defendants' experts had testified to the damage suffered by the remainder and the dollar amount of diminished value suffered from the taking, the plaintiff called a professional traffic planner to testify. The defendants' witnesses had based their opinions of damages in part on the reduced accessibility of the remainder from and to main traffic routes according to the plaintiff's final road plans, which had been received in evidence. The plaintiff's traffic planner testified that the village of Schaumburg had proposed a road plan that would extend Schaumberg Road and bring it in proximity to the remainder. The defendants objected to the question put to the witness and his answer, and in chambers argued that only the plaintiff's final road plan could be considered in determining accessibility. The trial court agreed and sustained the objection. The defendants did not make a motion to strike the question and answer and to instruct the jury to disregard them. In chambers the plaintiff made an offer of proof which detailed what the answer of the witness would have been as to the effect of the proposed road on the remainder's accessibility. We consider there was no error. The court sustained the objection of the defendants. The witness's comment was but preliminary to what the plaintiff's attorney, judging by his offer of proof, intended to develop through the witness. Too, the maps in *130 evidence, when examined by the jury, would not have reflected the remark of the witness but only the plaintiff's final plans.
This witness also testified that a road leading to and from Martingale Road (which led to Higgins Road) could accomodate a maximum flow of 750 vehicles in one hour. An expert witness for the defense testified that this maximum would be 400 vehicles. On cross-examination defense counsel brought out that the plaintiff's witness was testifying to maximum car flow through the exit if the access were improved beyond the plaintiff's final plans and a two-lane exit and entrance at Martingale Road were provided. The plaintiff's witness then admitted that under the plaintiff's final plans the maximum vehicle flow in one hour would be 400 vehicles. The defendant's motion to strike the witness's testimony because it was based on future possibilities and not on the plaintiff's final plans was denied. The defendant now argues that the testimony of this witness was the product of the plaintiff's attorney's deliberate design to prejudice the jury and that the testimony was so prejudicial that a new trial is required.
The record does not support the allegation that the plaintiff's attorney intentionally brought out the testimony based on future plans or possibilities to broaden the ingress and egress from Martingale Road, when the testimony should have been confined to the plaintiff's final road plan. To the contrary, the record negates the allegation. It shows that the defense objected to the witness making an estimate as to the number of vehicles which could be accommodated. The trial court said an estimate would be proper if the witness had examined the plaintiff's final plans and, based on them, had an opinion as to the vehicle flow. The plaintiff's attorney then asked the witness what the traffic flow would be "as it is now constructed." (The roads existing at the time of trial were according to the plaintiff's final plans.) It was then that the witness inaccurately said the traffic flow would be a maximum of 750 outbound vehicles in one hour, which *131 was not based on the plaintiff's final plans. On cross-examination, the erroneous basis for the witness's opinion was brought out and he reformed his estimate and confirmed the testimony of the defendants' witness. The trial here was lengthy. Two weeks were required to try the issues. There are 1021 pages of transcript. We judge that under the circumstances any error was minimal and harmless. Under resembling circumstances in Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 338, we said: "But explanatory information was supplied on redirect examination, and for that reason we do not consider the initial error in admitting this evidence sufficiently prejudicial to warrant reversal." See also Bruske v. Arnold, 44 Ill.2d 132, 139, where we observed: "`[T]he ultimate question on review is not whether a trial was scrupulously free from error, but whether there was error which operated to the prejudice of the appealing party or unduly affected the outcome below. (Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 118.)' In this instance, we hold that there was not."
The jury here viewed the lands concerned. The verdict it returned was well within the range of the evidence. What we said in City of Chicago v. Shell Oil Co., 29 Ill.2d 136, 138, is appropriate here: "* * * where the jury's verdict is within the range of the evidence, and the jury has viewed the premises, the verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake." See also Department of Public Works and Buildings v. Lotta, 27 Ill.2d 455; Sny Island Levee Drainage Dist. v. Meyer, 27 Ill.2d 530, and cases there cited.
For the reasons given, the judgment of the appellate court is affirmed.
Judgment affirmed.