THE DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT, Petitioner-Appellant, *v.* PIONEER TRUST AND SAVINGS BANK *et al.*, Defendants-Appellees.

Second District (1st Division)    No. 75-116

Opinion filed June 8, 1976.

William J. Scott, Attorney General, of Chicago, Thomas J. Banbury and Noel C. Davis, both of Aurora (Frank S. Righeimer and Roy E. Frazier, Jr., Assistant Attorneys General, of counsel), for appellant.

Charles J. Myler and Donald J. Fabian, both of Ruddy, Myler & Bartsch, of Aurora, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Department of Business and Economic Development of the State of Illinois (hereinafter the State) appeals from an eminent domain judgment awarding defendants $415,706.20 as total just compensation following a jury verdict.[1] The State contends that defendants' valuation witnesses used an erroneous standard of value, that evidence of other sales was admitted although they were not comparable, and that various trial errors prevented a fair trial.

---

[1] In *Department of Business & Economic Development v. Pioneer Trust & Savings Bank*, 15 Ill. App. 3d 269 (1973), we affirmed a judgment which denied defendants' traverse. In that proceeding the Department and the defendant had stipulated that $196,800 was preliminary just compensation. A deposit of $246,000 was made, being 125% of that sum.

On January 2, 1969, the State filed its petition for condemnation for the acquisition of 49.196 acres owned by the defendants, to be used as a part of the National Accelerator Laboratory site. Defendants' property is a vacant parcel located at the southeast corner of Wilson and Kirk Roads in the city of Batavia in Kane County. The frontage on Wilson Road was approximately 1465 feet and on Kirk Road approximately 1340 feet. At the time of the filing of the petition the land was zoned R-1 (residential) under the existing zoning ordinance of the city of Batavia.

The trial to determine final just compensation was commenced on July 8, 1974. In general the State's valuation testimony ranged from $3250 per acre to $3500 per acre based on its assessment that the highest and best use of the property was for residential development. The valuation testimony for the defendants ranged from $9000 to $11,500 per acre on the basis that the highest and best use was for a planned unit development. The $415,706.20 verdict and judgment computes to a valuation of approximately $8463 per acre.

The State first contends that the trial court erred in refusing to strike the testimony of defendants' valuation witnesses, Gene Jaeger, a real estate broker, and Kent Shodeen and Raymond Lubbs, who were builders and developers. It argues that the record shows that the opinion of each of the three was based on either what a developer would pay for the property or what it would cost to develop it, not on fair market value based upon the concept of a willing buyer and willing seller.

Defendants, however, state that the witnesses gave their opinion as to the fair market value as between a willing buyer and a willing seller. They further respond that the trial court exercised its proper discretion in ruling on the admission of the expert testimony and that the weight of the evidence was for the jury. Defendants further contend that the State did not move to strike the testimony of the witness Jaeger and has therefore waived this contention as to his testimony.

■■ The definition of fair cash market value is the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obligated to sell in a voluntary sale, ascertained as of the date of filing the petition to condemn. (See *Eminent Domain: Property Valuation*, 1973 U. Ill. L. F. 449, 450. See also *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410 (1969).) In *Oberlaender* (page 415), the Supreme Court states the rule:

> "[T]he measure of compensation for land taken in a condemnation proceeding is the fair cash market value of the property for its highest and best use. Fair market value can be defined as the price for which the property would sell under ordinary circumstances surrounding the sales of property, assuming both an owner willing to sell and a purchaser willing, but under no compulsion, to buy.

(*Forest Preserve Dist. v. Hahn*, 341 Ill. 599, 602; see, *Department of Public Works and Buildings v. Filkins*, 411 Ill. 304, 307.)"

It is also clear that the rule takes into account the parties' right to adopt their own theory as to the highest and best use of the land taken (*County of Cook v. Holland*, 3 Ill. 2d 36, 41 (1954)), although the elements of value which are speculative and conjectural may not, of course, be considered. *Peoples Gas Light & Coke Co. v. Buckles*, 24 Ill. 2d 520, 531 (1962); *City of Chicago v. Giedraitis*, 14 Ill. 2d 45, 51 (1958).

In reviewing the record we find no merit in the State's contention as applied to the testimony of defendants' expert, Gene Jaeger. We reach the same conclusion as to the testimony of Mr. Lubbs. Although he did state that his definition of market value concerned only the costs that it would take for him to develop the land, he stated on re-direct examination that when he was testifying as to what he would pay he was considering this property as what any willing buyer and willing seller would arrive at as a price.

We do, however, find that the State's contention does have merit with regard to the testimony of defendants' expert witness, Kent Shodeen who was a builder and developer in the area. Shodeen testified that the fair cash market value of the property was $11,000 to $11,500 per acre. During cross-examination when the witness was asked how he arrived at his value opinion, he said that he took into consideration what a reasonable buyer and a reasonable seller would arrive at as the value. Questioned further, he indicated that he did not consider what the hypothetical normal person in the market would pay to a normal seller for the property. The issue of fair market value is addressed to what property would sell for in the market assuming a willing buyer and willing seller under no compulsion. (*Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410 (1969).) The price which a particular person might be willing to pay for reasons of his own is not the true standard of value. The correct basis for valuation testimony is the price of the property in the market generally. (*Chicago, Bloomington & Decatur R.R. Co. v. Kelly*, 221 Ill. 498, 506 (1906). See also *Indianapolis & Cincinnati Traction Co. v. Wiles*, 91 N.E. 161, 162 (Ind. 1910).) The testimony reflected that the witness's assumption upon which he based his value assessment was in error and his testimony should have been stricken.

A further claim of error in our view requires that the judgment be reversed and the case remanded for a new trial. The admission of the so-called "Stauber" sale as a comparable value seriously prejudiced the attempt to establish the fair market value of the subject property.

The Stauber sale involved a parcel of 16 acres of vacant land diagonally across the street from the subject property which had been sold by W.M.C. Corporation to William Stauber in September of 1970 for $12,500

per acre. The substance of the State's argument on this issue is that the sale should not have been admitted because it reflected a value as of a date 21 months subsequent to the filing of a petition to condemn without a showing by the property owner that the land values had not increased in the interval. The State argues that, in fact, the evidence adduced by defendants' witnesses shows that the land values did increase subsequent to January 2, 1969, stimulated by the removal of some 6800 acres from the market in connection with the acquisition of land for the National Accelerator Laboratory. It contends that the prejudice inherent in offering post-petition sales is that if they are made a basis as here for the valuation testimony, the testimony then reflects values not as of the petition date but as of a far future date which would not have been taken into consideration by a willing buyer and a willing seller as of the petition date. It also argues that the difference in zoning of the two parcels made them dissimilar. The defendants argue that the evidence indicates that local values did not increase in the interval after the announcement of the National Accelerator Laboratory.

■■ As a general rule, evidence of voluntary sales of similar parcels "occurring in the same vicinity at or about the time of filing are admissible unless such proof causes a confusion of issues which offsets the benefits to be derived therefrom." (*City of Chicago v. Blanton*, 15 Ill. 2d 198, 202 (1958).) Sales of property made after the filing of a petition are not rendered dissimilar as a matter of law merely because of the date of the sale if the party proposing them can show that such later value was unaffected by the condemnation proceedings. (See *Trustees of Schools v. Chicago City Bank & Trust Co.*, 126 Ill. App. 2d 302, 306 (1970); *Department of Public Works & Buildings v. Morse*, 3 Ill. App. 3d 721, 724 (1971).) The question of whether a sale is a comparable sale and thus entitled to admission into evidence rests largely in the discretion of the trial court and its decision will be reversed only where such discretion has been clearly abused. *City of Chicago v. Blanton.*

Defendant cites *Illinois Building Authority v. Dembinsky*, 90 Ill. App. 2d 451 (1968), in support of its position. In *Dembinsky* the petition to condemn was filed in August of 1965 and the trial court did permit a 1966 sale of property as a comparable sale. However, in *Dembinsky* the only contention raised by the appellant was that the court erred in admitting other sales of property which occurred prior to the one in 1966 and prior to the filing of the condemnation petition in that case. The appellate court was not confronted with a challenge to the 1966 sale. (*Illinois Building Authority v. Dembinsky*, at 456.) In addition, the opinion does not state when in 1966 the comparable sale took place. Thus, it is conceivable that such a sale could have occurred within five months of the filing of the petition to condemn. In the present case the petition to condemn was

filed some 21 months prior to the sale which is now being urged as comparable.

■■ Defendants' own witness, Graeme Stewart, testified that the market value of the properties surrounding the condemned site was slightly stimulated by the proposed project for which the property was condemned. If later sales are to be considered similar, the party proposing them is required to show that such later value was unaffected by the condemnation proceeding or the result thereof. (*Department of Public Works & Buildings v. Morse*, 3 Ill. App. 3d 721, 724 (1971); *Trustees of Schools v. Chicago City Bank*, 126 Ill. App. 2d 302, 305-6 (1970).) The great length of time between the filing of the petition to condemn in this case and the sale of the Stauber property in addition to the statement by defendants' own witness that the market value had been altered by the condemnation involved in this case renders a comparison between the property in question and the Stauber property far too speculative for a jury's consideration. It was therefore reversible error to allow testimony concerning the Stauber sale into evidence.

We will briefly rule on other issues raised which may come up on a retrial of the case.

Petitioner has argued that the trial court erred in granting defendants' motion in limine ordering all State's witnesses to refrain from mentioning that the city of Batavia had in effect an eight-month zoning moratorium at the time the petition to condemn was filed. The "moratorium" was imposed by resolution adopted by the city of Batavia on September 4, 1968, and it was in effect until May 4, 1969. The resolution stated that a moratorium is imposed on all changes of zoning and land use not recommended by the planning commission prior to the date of the resolution, "in view of the location of the National Accelerator and the enormity of its impact on our community," and is to be for a period of eight months duration "to allow for the completion of a planning study of the described area." Petitioner argues that because of the resolution defendants could not have rezoned the subject property on January 2, 1969, under any conditions, yet they were permitted to adduce testimony from numerous witnesses as to the reasonable probability of rezoning.

■■ We find no merit in the petitioner's position because the reasonable probability of rezoning in the near future can be taken into consideration in a determination of just compensation. (*Department of Public Works & Buildings v. Rogers*, 39 Ill. 2d 109, 113 (1968); *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 7 (1968); *Park District v. Becker*, 60 Ill. App. 2d 463, 468 (1965).) The resolution is in fact irrelevant to the issue of the probability of rezoning. The resolution by its own terms was to expire four months from the date the petition for condemnation was filed. Since the issue is the probability of rezoning in

the near future, a zoning moratorium which will only last for four months has little bearing on that possibility after its expiration.[2]

The petitioner claims that the trial court erred in compelling the State to produce a list of sales of property compiled by the State for the use of its appraiser in acquiring the entire National Accelerator Laboratory site for inspection and use of defendants and in refusing to permit the State to introduce such sales into evidence. The list, a compilation of 135 sales within an extensive geographical radius of the entire 6800 acre Weston site, was taken into consideration by the State's appraisers as indicating their extensive experience in the area. The defendants reason that it was important for the jury to then know the extent of "cooperation" between the witnesses in order to impeach the statement that they had independently arrived at similar conclusions.

■■ The State's argument must fail. Supreme Court Rule 201 (Ill. Rev. Stat. 1973, ch. 110A, par. 201) authorizes complete discovery disclosure. The reports of appraisers are not considered the work product of attorneys and there is no error in requiring their production. See *Department of Public Works & Buildings v. Oberlaender*, 92 Ill. App. 2d 174, 183 (1968), *aff'd*, 42 Ill. 2d 410 (1969); *City of Bloomington v. Quinn*, 114 Ill. App. 2d 145, 149-50 (1969).

The list could also be used by the defendants, as it was used, to impeach or at least reduce the weight of the State's expert testimony as to the value of the property. While an expert witness is competent to testify as to the real estate values if his testimony is not based solely on hearsay, the extent or amount of the witness's experience goes to the weight given his testimony. (*Trustees of Schools v. Schroeder*, 23 Ill. 2d 74, 78 (1961). See also *Littlestone Co. v. County of Cook*, 19 Ill. App. 3d 222, 233-34 (1974).) While this list does not disqualify any of the expert testimony given by the State since their opinions were not based solely on the sales contained within this list, the use of this list tends to reduce the weight given to each individual appraisal opinion of the State's witnesses as it tends to demonstrate that they were not the result of independent analysis.

■■ The list, however, was properly denied as evidence inasmuch as it contained sales of property which were not comparable to the property in question. Thus, the trial judge was correct in ruling that such evidence was not admissible.

We make no extended comment on other claims of error which are not

---

[2] Defendants have also argued that the city of Batavia does not have the power to "freeze" existing zoning regulations pending eminent domain proceedings and further that Batavia's zoning ordinance could not be suspended by a mere resolution. In view of our determination that the resolution is irrelevant to the issue of the probability of rezoning, we have not considered nor do we express an opinion concerning the merit of these additional arguments.

likely to reoccur upon a retrial. We comment, however, that we cannot agree with defendants' contention that the rule that it is highly improper to inform a jury what other property owners in the project have been paid (see *South Park Commissioners v. Ayer*, 237 Ill. 211, 217 (1908)) does not apply to cross-examination of a valuation witness regarding another appraisal. Under the guise of testing the knowledge of a witness, counsel may not elicit testimony concerning sales of other lands which he would have no right to introduce into evidence in support of his case. See *Forest Preserve District v. Chilvers*, 344 Ill. 573, 576-78 (1931).

■■ The instruction defining just compensation (IPI Civil No. 300.80) was given without modification. The petitioner had, however, submitted the following instruction to finding just compensation, which the court refused:

"When I use the words 'Just Compensation' for the defendant's property which has been taken, I mean the fair cash market value of the property at its highest and best use on January 2, 1969, and you should disregard the natural and normal growth in the area of the subject property since January 2, 1969."

The State argues that in view of the almost 5½ years which had elapsed between the date of the filing of the petition to condemn and the trial that the tendered instruction was necessary to insure the jury's consideration of the matter as of the January 2, 1969, date rather than on the basis of their much later view of the property in the course of trial.

Supreme Court Rule 239 (Ill. Rev. Stat. 1973, ch. 110A, par. 239) directs that whenever an instruction contained within the IPI is applicable it shall be given if it accurately states the law. When a party tenders an instruction which contains essentially the same principles of law covered by an IPI instruction that party's instruction shall be refused and the IPI instruction given. (*Department of Public Works & Buildings v. Guerine*, 19 Ill. App. 3d 509, 515-16 (1974).) In the present case the instruction contained within IPI (300.80) defines just compensation as the fair cash market value of the property at its highest and best use on the date the petition is filed. This by definition tells the jury to disregard the natural and normal growth in the area of the subject property after that date. Thus the IPI instruction contains the same principles as contained in the instruction tendered by the State and the trial court did not err in refusing that instruction.

We do not reach other claims of error which are not likely to arise upon retrial.

The judgment is reversed and the cause remanded for retrial.

Reversed and remanded.

GUILD, P. J., and HALLETT, J., concur.