155 Ill. App.3d 130 (1987)
507 N.E.2d 1321
THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant,
v.
BERNARD B. BIRGER et al., Respondents-Appellees (John W. Leskera et al., Respondents).
No. 5-86-0011.
Illinois Appellate Court  Fifth District.
Opinion filed May 5, 1987.
*131 *132 *133 Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, Roy E. Frazier, Jr., Assistant Attorney General, of Springfield, and Paul D. Giamanco, Special Assistant Attorney General, of Mt. Vernon, of counsel), for appellant.
John W. Leskera, of Dunham, Boman & Leskera, of East St. Louis, and Harry J. Sterling, of Sterling & Stanley, of Fairview Heights, for appellees.
Judgment affirmed.
PRESIDING JUSTICE KARNS delivered the opinion of the court:
The Department of Transportation of the State of Illinois (the Department) appeals from a judgment of the circuit court of Madison County awarding the Birgers the sum of $165,882 as additional just compensation for the taking and damaging of their property. We affirm.
The Department filed a petition for condemnation seeking fee simple title to a parcel of land held in trust by Bernard B. and Marguerite J. Birger (the Birgers). The property taken consisted of 47.65 acres, out of a total of 115.174 acres owned by the Birgers, located in the northwest quadrant of the intersection of Illinois Route 157 and Interstate 55/70 within the city limits of Collinsville, Illinois.
Witnesses for the Birgers testified the value of the property taken ranged from $1,024,500 to $1,906,000, with damages to the remainder ranging from $0 to $506,400. The Department's witness testified the value of the property taken was $455,000 with no damage to the remainder. The jury returned a verdict of $1,143,600 for the property taken and $22,282 as damage to the remainder for a total of $1,165,882. The circuit court entered judgment upon the verdict for the sum of $165,882 as additional compensation over the preliminary just compensation awarded in an earlier "quick take" proceeding.
On appeal, the Department argues the trial court erred in denying the motions to strike the testimony of the Birgers' valuation witnesses. The Department contends these witnesses based their valuation opinions upon improper factors, including noncomparable sales prices and speculative future developments in the area. The Department concludes the jury was therefore misled as to the proper value of the property taken and, because the jury was so misled, a new trial is required. The Department further argues because of additional alleged errors occurring during the course of the trial, the verdict was a result of passion or prejudice or a clear and *134 palpable mistake. We disagree.
 1-4 The owner of property condemned for public use is entitled to just compensation for the taking of his land. (E.g., Department of Public Works & Buildings v. Hufeld (1966), 68 Ill. App.2d 120, 127, 215 N.E.2d 312, 316.) Just compensation is determined by looking to the fair market value of the property for its highest and best use on the date of the filing of the condemnation petition even if the land is not being put to that use at the time of the filing. (E.g., Forest Preserve District v. South Holland Trust & Saving Bank (1976), 38 Ill. App.3d 873, 876, 349 N.E.2d 689, 692. See also City of Benton v. Odom (1984), 123 Ill. App.3d 991, 995, 463 N.E.2d 785, 788.) Both parties have the right to adopt their own theory as to the highest and best use of the land taken. (E.g., Department of Public Works & Buildings v. Roehrig (1976), 45 Ill. App.3d 189, 196, 359 N.E.2d 752, 760; Department of Business & Economic Development v. Pioneer Trust & Savings Bank (1976), 39 Ill. App.3d 8, 11, 349 N.E.2d 467, 471.) Fair market value, in turn, is the amount of money which a willing buyer under ordinary circumstances would pay to a willing owner in a voluntary sale, neither being under any obligation to buy or sell. (E.g., Department of Public Works & Buildings v. Oberlaender (1969), 42 Ill.2d 410, 415, 247 N.E.2d 888, 892; Department of Business & Economic Development v. Pioneer Trust & Savings Bank (1976), 39 Ill. App.3d 8, 10, 349 N.E.2d 467, 470.) Fair market value usually is determined in part by looking to comparable sales of land based on similarities in locality, character, time, proximity, market conditions, improvements, and modes of payment. See, e.g., People ex rel. Director of Finance v. YWCA (1979), 74 Ill.2d 561, 570, 387 N.E.2d 305, 310.
The parties here agree the highest and best use of the condemned property is for commercial development. The parties disagree, however, as to the evidence and factors to be considered in determining the value of the land.
 5, 6 The determination of whether a sale of land is a comparable sale and is admissible into evidence rests within the sound discretion of the trial court. (E.g., Department of Business & Economic Development v. Pioneer Trust & Savings Bank (1976), 39 Ill. App.3d 8, 12, 349 N.E.2d 467, 472.) While it is generally true that an expert's opinion based upon improper elements is incompetent and should be excluded or stricken upon proper motion (see Department of Transportation v. Bouy (1979), 69 Ill. App.3d 29, 38, 386 N.E.2d 1163, 1169), errors in rulings on the admissibility of evidence do not necessarily require reversal. Forest Preserve District v. Kelley *135 (1979), 69 Ill. App.3d 309, 314, 387 N.E.2d 368, 373.
The Department specifically takes issue with two of the valuation witnesses' selections of "comparable sales." The Department argues most of these sales were not arm's length transactions but rather were between related parties as part of an assemblage of land (individual parcels of land acquired to form a large, unified tract) for a specific, definite development, namely Eastport Plaza. After the first purchase in an assemblage sale, the buyer needs adjacent property more than the average buyer in an open market. The Department believes the property would therefore acquire a "special value" to the assemblage buyer, reflecting his "special need," which would color the purchase price of the land. The property values were further distorted, according to the Department, because certain individuals involved in the sale of property between Hilton and Eastport Plaza in particular had interests in both the selling and buying entities. The Department also complains of reference made to a noncash deal or a trade of land involving Eagle Bank. Eagle Bank purchased a parcel of land consisting of 7.95 acres but later deeded back all but 1.8 acres. The Department argues the original sale therefore was not really a cash sale, but a "deal" that involved later transactions in return for the cash paid, further distorting the value of the property. The last sale the Department takes issue with occurred after the filing of the petition for condemnation. The Department argues the Birgers failed to establish that the condemnation project did not influence the price of this later sale. The Department concludes that because all of these sales were not true comparables, the valuation witnesses relied on improper factors in arriving at a value for the Birgers' property and therefore their testimony should have been stricken.
 7-9 In general, evidence of a comparable sale gives the jury the benefit of an objective market evaluation against which it can consider an appraiser's valuation of the land taken. (Department of Public Works & Buildings v. Klehm (1973), 56 Ill.2d 121, 125, 306 N.E.2d 1, 4, cert. denied (1974), 417 U.S. 947, 41 L.Ed.2d 667, 94 S.Ct. 3072.) Exchanges of land, on the other hand, offer no objective market value for consideration and are therefore generally inadmissible. (56 Ill.2d 121, 125-26, 306 N.E.2d 1, 4, cert. denied (1974), 417 U.S. 947, 41 L.Ed.2d 667, 94 S.Ct. 3072.) Likewise, evidence of assemblage sales and other "special value" property (such as property specifically bought to be used for expansion of an adjoining business) is not usually admissible. Such sales may not reflect the true values of the land because the buyer may be forced to pay a *136 premium to acquire that specific property to complete his holding. See Department of Transportation v. Bryant (1978), 63 Ill. App.3d 483, 486, 380 N.E.2d 464, 468; Department of Transportation v. Prombo (1978), 63 Ill. App.3d 407, 412, 379 N.E.2d 953, 957.
Here, however, these problems do not exist. The Eagle Bank "exchange" of land was not a simple exchange. The sale was conducted in the specific fashion mentioned above to avoid certain ordinance restrictions. The end result was a sale of 1.8 acres for a specific cash price, providing some evidence of value. (See Department of Public Works & Buildings v. Klehm (1973), 56 Ill.2d 121, 126, 306 N.E.2d 1, 4, cert. denied (1974), 417 U.S. 947, 41 L.Ed.2d 667, 94 S.Ct. 3072.) As for the assemblage sales, the land acquired to develop Eastport Plaza did not acquire a "special value" merely because of the developer's intent. There was no evidence that no other parcels of land were not available to complete the project. (See Forest Preserve District v. South Holland Trust & Savings Bank (1976), 38 Ill. App.3d 873, 878-79, 349 N.E.2d 689, 694.) Furthermore, simply because certain land was selected by the developer of Eastport does not mean other buyers were not also competing for the same tracts to develop, thereby reflecting a truer market value for the land. In essence, there was no evidence of special need or a distorted market value. The sale of property allegedly made between Hilton and Eastport Plaza did not involve common principals or corporate owners and therefore did not automatically distort the value of the property. (Cf. People ex rel. Korzen v. Belt Ry. Co. (1967), 37 Ill.2d 158, 164-65, 226 N.E.2d 265, 268-69.) Finally, in reference to the sale of property made shortly after the date of the instant taking, there was no showing that there had been any substantial change in the area during the two-month period separating the filing of the petition and the sale of the land. Cf. Department of Business & Economic Development v. Pioneer Trust & Savings Bank (1976), 39 Ill. App.3d 8, 12-13, 349 N.E.2d 467, 471-72.
 10 Both valuation witnesses were subject to extensive cross-examination and all of the possible distorting factors were revealed to the jury. These factors went to weight, not admissibility. All of the sales occurred in the same vicinity and proximity in time. All of the sales provided some evidence of value which the jury could use in reaching its determination. Accordingly, we find no abuse of the trial court's discretion in allowing reference to these sales. See People ex rel. Director of Finance v. YWCA (1979), 74 Ill.2d 561, 570-71, 387 N.E.2d 305, 310.
 11 The Department next argues several of the valuation witnesses *137 included the same elements in determining the value of the land taken and in determining the damage to the remainder, namely the smaller size, the loss of frontage, and lower elevation of the remainder. Testimony fixing a value on the land taken at a higher rate than the remainder does not automatically mean the witness has considered the same element twice in reaching a conclusion on damages to the remainder. These witnesses also listed other factors, such as the necessity of moving the retention pond on the remaining land, in determining the damage to the remainder. (See City of Freeport v. Fullerton Lumber Co. (1981), 98 Ill. App.3d 218, 222-23, 423 N.E.2d 924, 928. See also F. Righeimer, Eminent Domain in Illinois sec. 5.062 (2d ed. 1972).) Again, these are matters of weight, not admissibility. The trial court carefully reviewed all possible factors mentioned and rejected those which clearly were improper and so instructed the jury when necessary. Obviously the jury found little value to any of the factors as evidenced by its verdict fixing nominal damage to the remainder. We find no abuse of the trial court's discretion.
 12 The Department further claims one of the witnesses testified that improvement resulting from the condemnation project increased his valuation of the subject property. We note this testimony involved offsetting damages to the remainder and had nothing to do with the value of the property taken.
The Department next contends the trial court erred in allowing into evidence testimony and exhibits pertaining to the proposed Illinois Department of Transportation regional office building to be constructed next to the Birgers' property. The Department argues that whether and when the building would be constructed, as well as what type of building would be constructed, were all speculative questions at the time of the taking, and, therefore, evidence pertaining to the building should not have entered into the valuation process. We disagree.
The testimony at trial revealed the site for the proposed building had already been selected and acquired prior to the filing of the instant condemnation petition. A commitment for utility expansion to the property had been made and plans had been drawn up for the proposed building. All of this was public information, and any knowledgeable buyer would be aware of such activity occurring near the subject property. Such activity necessarily would affect the value of the Birgers' land whether or not the proposed building was ever completed. Once again, we see no abuse of the trial court's discretion. (Compare Lake County Forest Preserve District v. Bank & *138 Trust Co. (1982), 106 Ill. App.3d 856, 862-63, 436 N.E.2d 237, 242, and Forest Preserve District v. Eckhoff (1939), 372 Ill. 391, 396, 24 N.E.2d 52, 55, with Forest Preserve District v. South Holland Trust & Savings Bank (1976), 38 Ill. App.3d 873, 877-78, 349 N.E.2d 689, 693-94, and City of Chicago v. American National Bank & Trust Co. (1972), 7 Ill. App.3d 1006, 1008, 288 N.E.2d 627, 629.) We also find the same to be true for the testimony of the mayor of Collinsville with regard to a proposed convention center in the area. While somewhat more speculative in nature, it was part of the evidence pertaining to the extensive development in the area, all of which a knowledgeable buyer would have been aware. To eliminate such information would require the jury to determine the market value of the property in a vacuum.
 13 The Department further complains of certain references made to Westport Plaza by two of the Birgers' valuation witnesses. The Department believes Westport, a well-developed commercial area in St. Louis County, was used as a comparison to Eastport for valuation purposes and as such was extremely prejudicial. The Department misconstrues the evidence. The trial court specifically ruled in a motion in limine that the value of properties in Westport Plaza were not to be shown to the jury as comparisons of the value of property in Eastport Plaza without foundation. The Birgers did not violate this ruling. They did not offer any evidence of land valuations in Westport Plaza. The developer of Eastport simply referred to Westport Plaza as a model for future development set in force long before the taking of the Birgers' property. Another witness simply referred to Westport Plaza as an example of the trend of development that could occur near major highways. We find no improper references to Westport Plaza or any evidence of its being used for valuation purposes.
 14 We further note that, in general, the improper admission or exclusion of value evidence does not constitute reversible error when there are other witnesses and evidence as to value on both sides and the jury has the opportunity of viewing the property and weighing the conflicting evidence. (See Department of Conservation v. Kyes (1978), 57 Ill. App.3d 563, 567, 373 N.E.2d 304, 307; Department of Conservation v. First National Bank (1976), 36 Ill. App.3d 495, 503, 344 N.E.2d 11, 17.) Such being the case here, we find no reversible error.
 15, 16 Finally, the Department finds error in a statement made during opening argument by counsel for the Birgers. In this statement, counsel made mention of the fact that one of the Department's *139 valuation witnesses expected to testify at trial had been paid $130,000. The Department moved for a mistrial, but the trial court chose instead to admonish the jury. The Department elected not to call this witness to testify.
In general, remarks which inflame the passions or prejudices of the jury constitute reversible error. (Fintak v. Catholic Bishop of Chicago (1977), 51 Ill. App.3d 191, 197, 366 N.E.2d 480, 485.) But, it is also within the sound discretion of the trial court to determine whether the arguments of counsel are inflammatory, for it alone has the superior opportunity to observe the impact of the remark or statement on the jury. (51 Ill. App.3d 191, 197, 366 N.E.2d 480, 485.) We find no abuse of the trial court's discretion in this instance. The trial court properly admonished the jury to disregard the statement without overemphasizing it, in addition to having previously instructed the jury that nothing the attorneys said in opening arguments was to be taken as evidence. The jury was sufficiently instructed to eliminate any prejudice, if any was created at all. Any possible error was harmless. Moreover, no improper information was supplied to the jury to inflame its passions or prejudices against the Department or to render the trial unfair. See Bucyna v. Rizzo Brothers Movers, Inc. (1961), 31 Ill. App.2d 31, 36-37, 175 N.E.2d 640, 643.
 17 The ultimate question on review is not whether the trial was scrupulously free from error, but whether any such errors operated to the prejudice of the appealing party or unduly affected the outcome below. (Department of Public Works & Buildings v. Klehm (1973), 56 Ill.2d 121, 131, 306 N.E.2d 1, 7, cert. denied (1974), 417 U.S. 947, 41 L.Ed.2d 667, 94 S.Ct. 3072.) We find no reason to reverse the judgment in this instance.
For the foregoing reasons, we affirm the judgment of the circuit court of Madison County awarding the Birgers the sum of $165,882 as additional compensation for the taking and damaging of their property.
Affirmed.
JONES and KASSERMAN, JJ., concur.