SOUTHERN ILLINOIS AIRPORT AUTHORITY, Plaintiff-Appellant, v. PAUL E. SMITH, Defendant-Appellee (Marilyn Sue Smith *et al.*, Defendants).

Fifth District No. 5—93—0259

Opinion filed October 18, 1994.—Rehearing denied November 14, 1994.

Michael F. Dahlen and Paul G. Schoen, both of Feirich/Schoen/Mager/Green, of Carbondale, for appellant.

William L. Broom III and Patricia A. Small, both of Barrett, Twomey, Morris, Broom & Hughes, of Carbondale, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Southern Illinois Airport Authority (SIAA) appeals from an order by the trial court setting aside a jury verdict and ordering a new trial for the failure of SIAA to disclose in discovery a comparable sale of property used by SIAA in cross-examination of an adverse valuation witness. We reverse.

SIAA is a municipal corporation that owns and operates the Southern Illinois Airport located in Jackson County. SIAA exercised its right to acquire through eminent domain 6.12 acres owned by Paul Smith. In the ensuing jury trial on October 14, 1992, the jury found that the fair cash market value of the Smith property was $95,000 and returned a verdict in this amount. On March 22, 1993, the trial court entered an order setting aside the jury's verdict, vacating the judgment, and ordering a new trial.

The pivotal issue at trial concerned the highest and best use of the property. SIAA called several witnesses to testify that the airport and the defendant's property were located five or six miles from Carbondale, on a back road that was several miles off the main highways,

Routes 13 and 51; that there had been no commercial development since 1968; that four commercial airlines had ceased operation since 1984; that no commercial airline was operating on the date the complaint was filed, May 3, 1991; and that the surrounding land was primarily used for agricultural production.

SIAA's expert, Glenn Grosse, a real estate appraiser, testified that the highest and best use of the Smith property was residential, its existing use, and that it had a fair market value of $83,500. Paul Smith, the owner, testified that the highest and best use of the property was commercial and that the fair cash market value was $250,000. Smith's valuation witness, Aloise Schwegel, a real estate broker, testified that the highest and best use was commercial, with a fair market value of $150,000.

During the cross-examination of Smith, SIAA's counsel asked a few questions about a 1990 sale of land called the Crane property, a 40-acre tract located across the road from the Carbondale public golf course that was under construction and about a mile from the Smith property. Smith had testified during direct examination that he had used comparable sales in the vicinity in placing a value on his land. Smith admitted on cross-examination that the Crane property was similar to his property, because of the nearness to the airport and the golf course. SIAA had the deed and real-estate-tax-declaration forms marked as exhibits, but they were not shown to the jury. The court recessed for the day and reconvened the next morning.

Schwegel was then called to testify by Smith, and on cross-examination, Schwegel was questioned, over Smith's objection, regarding the 1990 sale of the Crane property. The sale price was $60,000, or $1,500 an acre. Schwegel had testified on direct that he reviewed sales of property from the courthouse records and that he used the records of deeds and tax-declaration sheets in his business. He further testified on direct examination that the proposed golf course was the "primary factor in [his] determination" and that it would have a "great deal of effects [sic]" on the Smith property. The Crane property is located on the frontage road right across the road from the golf course and is comprised of acreage with a residence.

Following the verdict, Smith filed a post-trial motion in which he alleged, among other things, that the court erred in allowing SIAA to use the Crane sale in cross-examination because this sale was not disclosed to Smith during discovery. Attached to Smith's post-trial motion was an affidavit of Barry Wesley which stated that Wesley's parents purchased the Crane property for the purpose of preventing a developer from acquiring it and with the intention of giving the Crane property to Barry Wesley in the future, because Wesley owned

the adjoining tract. The affidavit concluded that the purchase was an assemblage sale, which combines adjoining lots into a single lot. After a hearing on Smith's post-trial motion, the trial court entered an order setting aside the jury's verdict, vacating the judgment, and ordering a new trial. The court stated:

"[T]here's no doubt in this court's mind that the Crane to Wesley sale had the *potential* of having a significant impact upon the jury ***.

*** [I]t's this Court's belief that the Crane to Wesley sale has the *potential* of having a profound impact and changing the direction and decision making in this case to such an extent that it should be fully pledged [*sic*] out during the discovery aspects of this case, that the use of that particular property should have been investigated by the experts that were testifying with regard to this case and that it was not ***." (Emphasis added.)

A reviewing court will not reverse the order granting a new trial unless it is shown to be an abuse of discretion. (*Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 494, 211 N.E.2d 720, 727.) Smith argues that the trial court's decision to grant a new trial was not an abuse of discretion because SIAA did not disclose the Crane sale to Smith prior to trial and the use of the deed and the transfer declaration sheet evidencing said sale in cross-examining the defendant's witnesses was prejudicial error. Smith contends that the Crane sale documents should have been produced during discovery because he filed (1) a request to produce documents, (2) a notice of deposition of Gary Shafer requesting documents, (3) a Supreme Court Rule 213(e) supplemental interrogatory (134 Ill. 2d R. 213(e)), and (4) a Supreme Court Rule 237 notice to appear and produce (134 Ill. 2d R. 237). SIAA disputes Crane's contention, arguing that disclosure of the Crane sale documents was not necessary because the documents did not fall within the parameters of Smith's discovery requests.

Smith argues that his June 6, 1991, request for production of documents, notice of deposition, supplemental interrogatory, and Rule 237 notice were sufficient to advise SIAA to produce the Crane sale documents. Because each of Smith's discovery requests refers to the materials requested in his initial request to produce, we will take a closer look at that pleading. The June 6, 1991, request for production of documents requested in particular:

"(5) All copies of any and all appraisals made, commissioned, or received in connection with this litigation.

(6) *Copies of all* deeds, contracts, or underlying supporting documents or memorandums concerning *any comparable sale properties to the subject property*." (Emphasis added.)

SIAA contends that because paragraph 5 requests documents

pertaining to appraisals of the subject parcel and paragraph 6 requests documents pertaining to "comparable sale properties to the subject property," the documents requested in paragraph 6 were documents pertaining to parcels identified by SIAA's appraiser or other valuation witnesses and relied upon as comparable-sale property. SIAA submits that paragraph 6 does not on its face request production of documents pertaining to any and all parcels of real estate, but rather only those that have been determined to be comparable-sale properties by SIAA's valuation witness. In addition, SIAA contends that Smith's request cannot reasonably be construed as calling for disclosure of the Crane sale documents because it is always proper to cross-examine a valuation witness on factors he considered in reaching his opinion on value. We agree with SIAA's argument with some reservations. Supreme Court Rule 214 (134 Ill. 2d R. 214) provides for the discovery of "specified" documents. The specificity requirement of the rule serves two purposes: to provide a reasonable description of the items requested, enabling those from whom discovery is sought to know what is being demanded of them, and to aid the trial court in ascertaining whether the requested material is exempted or privileged from discovery. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 356, 221 N.E.2d 410, 414.) SIAA argues that Smith's discovery request demanded the disclosure of comparable-sale properties and, from SIAA's viewpoint, the Crane sale was not a comparable-sale property.

■ We could decide this case on the basis of defendant's discovery request not being specific enough to enable the court and opposing counsel to know that "comparable sales" included any deeds to be used solely on cross-examination. The Crane sale was not comparable, according to SIAA, any more than all other recent sales in the area. It was only when Smith and Schwegel testified that the proposed golf course, located one mile from the Smith property, increased the value of the Smith property that the Crane property became comparable. Since the trial judge, however, believed such request was specific enough, and it could be reasonably construed either way, we will assume that the request was specific enough to put SIAA on notice that the Crane deed and tax declaration were requested, even if they were only to be used on cross-examination.

There are still two questions to be decided: was the defendant entitled to the information and, even if defendant was so entitled, did the nondisclosure result in a miscarriage of justice requiring a new trial?

■ This case presents the classic confrontation in jurisprudence between the need for full disclosure to reach the truth and the need

to enhance the capability to conduct a vigorous cross-examination to ascertain the truth. On the one hand, how can a witness, especially an expert witness, testify competently and accurately about complex and difficult matters, unless the witness has been provided the time to consider the document on which he is being cross-examined?

> "The purposes of litigation are best served when each party knows as much about the controversy as is reasonably practicable. The objectives of pretrial discovery are to enhance the truth-seeking process, making good faith compliance with such procedures both desirable and necessary [citation]; to enable attorneys to better prepare and evaluate their cases [citation]; [and] to eliminate surprises as far as possible [citation] so that judgments will rest upon the merits and not upon the skillful maneuvering of counsel ***." *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 231-32, 443 N.E.2d 1125, 1128.

On the other hand, how can the cross-examiner demonstrate to the trier-of-fact that the witness is being untruthful or lacks the requisite knowledge, experience, or education necessary to proffer testimony that is trustworthy, reliable, and believable, if the cross-examiner must disclose to his opponent prior to cross-examination the documents that will be used to conduct the cross-examination?

> "We have long recognized that the principal safeguard against errant expert testimony is the opportunity of opposing counsel to cross-examine, which includes the opportunity to probe bias, partnership or financial interest." (*Trower v. Jones* (1988), 121 Ill. 2d 211, 217, 520 N.E.2d 297, 300.)

If the cross-examiner, to use a cliché, must telegraph his punch, cross-examination would lose its effectiveness. If complete disclosure is the optimum, would it not be more in the spirit of full disclosure to require the "cross-examiner" to submit his questions to the opponent's witnesses prior to trial? By eliminating the spontaneity, we would certainly avoid surprises. We may also be limiting the ability to ascertain the truth.

We should make it clear from the outset that we are limiting our opinion to documents used in cross-examination only. If such documents were used by the cross-examiner in his case in chief or to bolster the testimony of his witnesses, we would not hesitate to rule against such nondisclosure. See *Department of Transportation v. White* (1994), 264 Ill. App. 3d 145 (where this court upheld the trial court's exclusion of plaintiff's valuation experts from testifying because plaintiff had not disclosed comparable sales relied upon by its experts); see also *Karr v. Noel* (1991), 212 Ill. App. 3d 575, 571 N.E.2d 271 (where the cross-examiner used several undisclosed medical texts in cross-examination of plaintiff's expert and then

sought to authenticate such texts and to bolster the believability of his expert by raising the texts in rebuttal testimony by his expert).

We are also not suggesting, advocating, or condoning withholding from discovery documents that may be damaging to the party requested to produce such. (See *Delvecchio v. General Motors Corp.* (1993), 255 Ill. App. 3d 189, 625 N.E.2d 1022 (where this court held that nondisclosure of reports of engine stalls received by the defendant from a Federal agency required a new trial).) Simply because a party does not wish to use a document in any manner does not excuse the party from producing a document within his knowledge and control. We are referring only to documents to be used solely in cross-examination that are within the public domain and are equally available to both parties.

We should be realistic and practical. A busy lawyer may not have the time to plan for the cross-examination of the opponent's witnesses months and even years before a trial. Consequently, if we ruled that all documents that may be used on cross-examination must be disclosed to the opponent, it is almost a certainty that there would be a last-minute filing of numerous documents in many cases. This would necessitate a hearing, because the opponent would not know if the cross-examiner intended to use the documents in his case in chief or on cross-examination. In the case at bar, SIAA's attorney checked the records of the recorder of deeds just one day before the trial commenced and found the records of the Crane sale. If SIAA had disclosed such, defendant surely would have demanded to know if SIAA's appraiser intended to use the Crane deed.

Moreover, mandatory production of all documents that may be used in cross-examination could cause a deluge of documents disclosed at the last minute. If the cross-examiner knows that he will be prohibited from cross-examining his opponent's witness about a document unless it was disclosed in discovery, the thorough and cautious cross-examiner will be forced to disclose every conceivable document that might be used during his cross-examination. In the case at bar, the defendant and his expert testified that they arrived at their opinion as to the value of the property based on current real estate sales, lists, periodicals, and files or services in the courthouse. In order to be safe, SIAA would have to disclose all of the sales of land within the last decade in the vicinity of the airport, in addition to maps, census figures, photographs, traffic counts of the Department of Transportation, any and all documents personally pertaining to defendant and Schwegel, etc. In this age of the computer, the cross-examiner may simply overwhelm the opponent shortly before the commencement of the trial with volumes of computer-generated in-

formation under the pretext that one can never be certain of what will arise under a probing cross-examination. The Crane sale could have been hidden in reams of paper without there being any bad faith attributable to SIAA. Discovery could be rendered meaningless and absurd.

Since *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, an expert witness has been permitted to give an opinion without stating the underlying basis for it. Further, the supreme court noted that "the burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion." (*Wilson*, 84 Ill. 2d at 194, 417 N.E.2d at 1327.) Under these circumstances, cross-examination becomes very important. No one can be assured as to where cross-examination may lead, even if the expert has been deposed. Surely, to test whether the witness is truly an expert, it is important to show the trier-of-fact that the expert does not keep up with or disagrees with the latest knowledge or state of the art in his field of expertise. Should we require the cross-examiner to educate the opponent's expert prior to trial, so that the expert will not look foolish?

Further, we believe that there has to be some limitation on discovery. Lawyers and their witnesses will generally try to become knowledgeable about the subject matter of the suit. The failure by a party to disclose all documents used in research of the subject matter should not be a violation of discovery. If SIAA's attorney or appraiser were seen prior to trial looking through the deed records in the county clerk's office and SIAA did not disclose or use the Crane sale, surely no one would seriously claim that SIAA violated Smith's discovery request.

There are, of course, numerous examples of problems that could arise if disclosure of all documents to be used on cross-examination is the rule. For instance, a doctor may testify that there are no side effects to a particular drug. Should the cross-examiner be prohibited from obtaining a copy of the Physician's Desk Reference and cross-examining the doctor on such unless disclosed in discovery? Besides recognized treatises, court records, maps, and deeds, other documents in the public domain that easily come to mind are telephone directories, tax records, census figures, statutes, ordinances, newspapers, and budgets of governmental bodies. Not only are we concerned about the volume of paperwork to be disclosed, but we are also concerned about the wisdom of excluding the use of such documents on cross-examination merely because the cross-examiners have not warned their opponents of the existence of these documents that are within the public domain and easily obtainable.

We stress that the deed in this case was as equally available to the defendant as SIAA. In fact, defendant and his valuation witness, Schwegel, both testified on direct that they kept abreast of property values in Jackson County and based their opinion in part on property sales recorded at the courthouse. They also based their opinion on the highest and best use of the land being commercial, as opposed to residential, because of the airport's master plan and the location of the property near to the golf course and the airport. An expected and normal question on cross-examination would be, did you know about or consider the 1990 sale of the Crane property that is in the vicinity of the Smith property and the airport and across the road from the golf course? The Crane documents were the very type of documents that Smith and Schwegel testified that they relied upon in deriving a value for the Smith property. To refuse to permit a probe into the witnesses' assertions of knowledge of land use and prices that they, themselves, said they were familiar with, because of the failure to prewarn the witnesses of the intent to do so, is in effect a severe restriction on the right to cross-examine adverse witnesses. See *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Metropolitan Sanitary District of Greater Chicago v. Industrial Land Development Corp.* (1970), 121 Ill. App. 2d 393, 257 N.E.2d 532.

There may be many reasons to prohibit the use of the document in cross-examination, but in general, if the document is equally available to both parties, in the public domain, easily accessible or obtainable, only to be used on cross-examination, and is such that the witnesses should be familiar with it if their testimony is to be given any credibility, then the cross-examiner should be allowed to use the document in spite of nondisclosure.

■ Smith raises the issue that the Crane sale was an assemblage sale and, therefore, was not a comparable sale to be properly used in cross-examination. It could be argued, and it seems more logical to us, that if the Crane sale was truly an assemblage sale, the price paid by Wesley's parents would be higher, not lower, due to their desire to prevent a developer from acquiring the property. The selling price of $1,500 per acre for the Crane property, therefore, may have been higher than if the property had been sold to a developer.

■ The fact that Schwegel was successful in withstanding the cross-examination of SIAA's attorney answers the final issue. No harm was committed by allowing the cross-examination.

Jury verdicts should not be set aside and, thus, cause the expense of a new trial, unless there has been a miscarriage of justice, caused by the error that prejudiced and affected the substantial rights of the innocent party. (*Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d

363, 553 N.E.2d 291.) "New trials can be ordered only when the evidence improperly admitted appears to have affected the outcome." *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115, 483 N.E.2d 273, 277; see also *Stennis v. Rekkas* (1992), 233 Ill. App. 3d 813, 599 N.E.2d 1059; *Lively v. Kostoff* (1988), 167 Ill. App. 3d 384, 521 N.E.2d 554.

Further, we note that the trial judge did not necessarily commit reversible error when he allowed the cross-examination, as "in general, the improper admission or exclusion of value evidence does not constitute reversible error when there are other witnesses and evidence as to value on both sides and the jury has the opportunity of viewing the property and weighing the conflicting evidence." (*People ex rel. Department of Transportation v. Birger* (1987), 155 Ill. App. 3d 130, 138, 507 N.E.2d 1321, 1327.) The evidence of the Crane sale was not substantive evidence, but even if it was, we should not order a new trial.

Smith's testimony was, of course, questionable due to his interest in the outcome of the case. Schwegel's testimony was almost stricken by the trial judge because of Schwegel's limited experience in evaluating land and because he admitted that he was not making an appraisal of Smith's property but was only expressing his opinion as to value. SIAA's expert, on the other hand, was very experienced in appraising real estate.

Further, the jury viewed the property and could see how far this piece of property was inconveniently located from the main highways, the Carbondale business district, and the Southern Illinois University main campus. Moreover, the jury had the testimony that even though the airport master plan of 1974 called for the eventual situs of a motel on the Smith property, that plan was based on a proposed freeway being built nearby and the growth of the commercial airline, Air Illinois. Not only had no motel been built in almost 20 years, but Air Illinois went into bankruptcy and the proposed freeway died. Four scheduled airlines and the airport restaurant failed thereafter, and none were operating on the date of the taking of the Smith property. Finally, the Smith property is now in the flight pattern for the airport, making it undesirable for a motel site.

The jury, in spite of all of the negatives, awarded Smith $11,500 more than the top valuation for the land as residential property. The jury also did this in spite of the Crane property selling for $1,500 per acre as opposed to the jury's award of $15,322.58 per acre to Smith.

Accordingly, we reverse the trial court and remand said cause

with the direction to reinstate the jury verdict and to enter judgment thereon.

Reversed and remanded with directions.

CHAPMAN and GOLDENHERSH, JJ., concur.